UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:12 CR 144 RL-APR |
| | ) | |
| MONTELL WILLIAMS | ) | |

### GOVERNMENT SENTENCING MEMORANDUM

Comes now the United States of America, by David Capp, United States Attorney for the Northern District of Indiana, through Jill R. Koster, Assistant United States Attorney, to address the issues now ripe for this Court's consideration as to Defendant Montell Williams.

### A. DEFENDANT HAS BREACHED HIS PLEA AGREEMENT

Upon remand, Defendant sought, with the government's agreement, a full resentencing hearing, which the Court ordered. *See* DE # 95, DE # 98 *and* DE # 101. Thereafter, Defendant raised new objections to Probation's calculation of his applicable Guideline range – objections not raised at his initial sentencing hearing. *See* DE # 111 (setting forth Defendant's objections and the responses of the government and Probation). Defendant's new objections, and the arguments made in support of those objections in his Sentencing Memorandum, DE # 114, directly contradict agreements he made with the government which were set forth in his plea. *Compare id.* at 1

1

(objecting to application of the cross-reference to Guideline § 2A3.1) *with* DE # 40 at para. 7(d)(iii) ("The United States of America and I agree that the cross-reference set forth in § 2G1.1(c)(1) applies due to my offense conduct"); *compare* DE # 111 (objecting to the requirement that he register as a sex offender) *with* DE # 40 at para. 7(d)(iv) ("The United States of America and I further agree to recommend that the Court order, as a mandatory condition of my supervised release, that I register as a sex offender and comply with state sex offender registration requirements pursuant to 18 U.S.C. § 3583(d) and 42 U.S.C. § 16913"); *and compare* DE # 114 at 3 (arguing that "the correct guideline for [him] is a Level 15") *with* DE # 40 at para. 7(d)(iii) ("Based on the application of the above-referenced specific offense characteristics, the United States of America and I agree that the Guideline level I will face if I receive full credit for acceptance of responsibility is a Level 31").

As explained in the government's recent motion, it appears Defendant wants to escape application of the unfavorable provisions of his plea while simultaneously benefiting from the favorable ones. *See* DE # 115 at 2. The government sought a continuance of Defendant's resentencing hearing so it could weigh its options. *Id.*

One option the government believes it has given this development is to seek to withdraw Defendant's plea due to his breach of the parties'

agreement.  *See* DE # 40 at para. 7(h) (acknowledging that if he violates any provision of his plea agreement, the government can ask the Court to "declare this entire plea agreement null and void, in which case [Defendant] can then be prosecuted for all criminal offenses that [he] may have committed").  That approach would allow the government to prosecute Defendant for both of his violations of 18 U.S.C. § 1591(a), each of which carries a statutory mandatory minimum sentence of incarceration of 15 years, as well as his other Mann Act offenses.  *See* DE # 38 (charging Defendant, in Counts 1 and 2, with sex trafficking victims J.S. and E.D. by force, fraud and coercion and, in Counts 4 and 5, with Mann Act offenses involving E.D. and victim S.H.).

Rather than pursue that course of action, however, the government has decided to present to the Court evidence supporting Probation's Guideline calculations and to urge the Court to once again sentence Defendant to a term of incarceration of 120 months.  The government further asks, in light of Defendant's objection to registering as a sex offender and Probation's recent determination that he likely cannot be forced to do so, *see* DE # 111 at pp. 5-6, that the Court revise its prior sentence to require that Defendant remain on supervised release for the rest of his life once he has served his sentence of incarceration.  As discussed in more detail below, a lifetime term of supervised release, as contemplated by 18 U.S.C. § 3583(k), is appropriate for Defendant because of his violent offense and relevant conduct, his personal

history and characteristics, and the risk of danger he poses to society generally and to young women specifically.

In its recent decision in *United States v. Mobley*, 2016 U.S. App. LEXIS 14972 (7th Cir. August 15, 2016), the Seventh Circuit explained:

> In the course of imposing a new sentence, the district court is authorized to reconsider all elements of the sentence, including in particular the prison term and the conditions of supervised release. It may consider any relevant evidence or arguments that are properly admissible at the new hearing. While the district court is not required to consider new arguments or evidence about the term of imprisonment (or any other element of the sentence), it must exercise its discretion in declining to do so—that is, it is required to acknowledge that it has this power and explain why or why not it wishes to exercise it.

*Id.* at *9-10. The government respectfully requests that the Court consider the new evidence submitted herewith in support of its requested sentence of 120 months of incarceration followed by a lifetime term of supervised release.

### B. **PROBATION PROPERLY CALCULATED DEFENDANT'S GUIDELINE RANGE**

Probation's application of the cross-reference set forth in Guideline § 2G1.1(c)(1) is proper. That provision states: "If the offense involved conduct described in 18 U.S.C. § 2241(a) or (b) or 18 U.S.C. § 2242, apply § 2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse)." Probation also correctly applied the 4-level enhancement set forth in § 2A3.1(b)(1) because Defendant's offense indeed involved conduct described in 18 U.S.C. § 2241(a). Finally, Probation was right to apply the 2-level

enhancement in § 2A3.1(b)(4)(B) due to Defendant's offense causing serious bodily injury to victim J.S.

Defendant pled guilty to Count 3 of the Superseding Indictment. That offense charged him with knowingly transporting victim J.S. "in interstate commerce, i.e., from Indiana to Illinois and from Indiana to Georgia, with intent that she engage in prostitution." DE # 38. But Defendant was not charged with committing this crime in a single instance, he was charged with committing it over an eight-month period – i.e., from "[b]etween on or about June 2011 and on or about February 5, 2012." DE # 38.

The Guidelines define the term "offense" to include "the offense of conviction <u>and all relevant conduct under § 1B1.3 (Relevant Conduct)</u> unless a different meaning is specified or is otherwise clear from the context." Guideline § 1B1.1(H) (emphasis added). No other or different meaning is specified or otherwise clear from the context of § 2G1.1(c)(1) or § 2A3.1(b)(1). Accordingly, in deciding whether these enhancements apply, the Court can and should consider all of Defendant's conduct falling within the Guideline definition of "relevant conduct." That definition includes:

> all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

Guideline § 1B1.3.

As explained above, Defendant pled guilty to transporting victim J.S. in interstate commerce with intent that she engage in prostitution from on or about June 2011 to on or about February 5, 2012. Each of the offenses charged in Counts 1, 2, 4, and 5 of the Superseding Indictment likewise involve prostitution. *See* DE # 38. Count 1 specifically involves victim J.S. *Id.* Counts 2 and 4 specifically involve another victim identified as E.D. *Id.* And Count 5 names yet another victim, S.H. The conduct alleged in each of Counts 2, 4 and 5 *occurred within the time-frame alleged*– i.e., during the commission of – Count 3, Defendant's count of conviction. And although Count 1 alleges that Defendant trafficked victim J.S. using force, fraud and coercion beginning in or about October 2010 – eight months prior to transporting her across state lines as alleged in Count 3 – there can be no doubt that Defendant's forced prostitution of J.S. was carried out *in preparation for* his later crime of transporting her across state lines with intent that she engage in further prostitution. Accordingly, all of the offenses alleged in the Superseding Indictment fit within the Guideline definition of "relevant conduct." Put another way, because of their timing and because the conduct alleged in each count brought against Defendant involves his prostitution of women, *all* of that previously charged conduct fits within the meaning of "the offense" under § 1B1.1(H).

6

1. **Defendant's offense "involved conduct described in 18 U.S.C. § 2241(a)"**

Probation correctly applied the cross-reference to § 2A3.1 and the 4-level enhancement in § 2A3.1(b)(1). Each applies if the preponderance of the evidence shows that Defendant's offense involved conduct described in 18 U.S.C. § 2241(a) ("Aggravated Sexual Abuse").

Section 2241(a) prohibits causing another person to engage in a sexual act by using force or by threatening or placing the person in fear that any person will be subjected to death, serious bodily injury, or kidnapping, or attempting to do so. There is no question that Defendant's offense conduct meets that standard.

Provided to the Court herewith is a binder with 6 tabs containing evidence collected in this case, including sworn testimony before the Grand Jury from victims J.S. and E.D., as well as witness C.R. A copy of the binder is being made available to defense counsel for review prior to Defendant's re-sentencing hearing. The original binder will be moved into evidence under seal at Defendant's August 30, 2016 re-sentencing hearing.

"In the sentencing context, the district court is not bound by the rules of evidence and, so long as it is reliable, may consider a wide range of evidence, including hearsay, that might otherwise be inadmissable at trial." *United States v. Ghiassi*, 729 F.3d 690, 695-696 (7th Cir. 2013) (citations

omitted); *see also* Fed. R. Evid. 1101(d)(3); U.S.S.G. § 6A1.3(a). "Moreover, as the Sixth Amendment's confrontation clause does not apply to a sentencing proceeding, the court may rely on the testimony or other statement of a witness even if that witness has not been subject to cross-examination by the defendant." *Ghiassi*, 729 at 696 (citations omitted); *see also United States v. Harmon*, 721 F.3d 877, 888-889 (7th Cir. 2013); *United States v. Chychula*, 757 F.3d 615 (7th Cir. 2014) (affirming application of the obstruction of justice enhancement based on the defendant's false testimony before the Grand Jury, as proven up with Grand Jury transcripts).

Tab 1 of the binder contains the sworn Grand Jury testimony of victim J.S., who is named in Defendant's count of conviction, Count 3, as well as in Count 1. J.S. testified that she did not want to work as a prostitute but that Defendant, her then-boyfriend, caused her to do so by using force, fraud and coercion, and that he kept all the money she earned. *See* Tab 1 at 8-20. According to J.S., Defendant also frequently forced himself on her sexually; Defendant treated J.S. as his property and had sex with her whenever and however he pleased. *Id.* at 20-21. At times during sex, Defendant would tie J.S. up, restrain her with handcuffs, or bite her hard enough to cause marks and bruising. *Id.* J.S. described in detail several of the more brutal beatings she suffered at Defendant's hands. *See id.* at 22-33, 47-58 and 63-66. In the

8

midst of one beating, Defendant pinned J.S. down and raped her while hitting her in the face and calling her a "bitch and ho." *Id.* at 33.

Tab 2 of the binder contains photographs of J.S. taken at a hospital after one beating by Defendant. J.S.'s back, arms and legs are covered with bruises, slashes and cuts, her front tooth is broken, and her left hand is cut open and bleeding. Tab 2. The photographs unquestionably demonstrate that J.S. was seriously injured by Defendant. *Id.*

At Tab 3 of the binder the Court will find various police reports relating to Defendant's extreme physical abuse of victim J.S. Unfortunately due to her (clearly justified) fear of Defendant, J.S. did not ultimately cooperate in the prosecution of Defendant for that heinous conduct.

Victim E.D. also testified before the Grand Jury. *See* Tab 4. E.D. explained that she met Defendant after answering an advertisement for a business called "Diamond Dolls" that promised she could make money fast. *Id.* at 6. She needed the money to hire a lawyer to assist her in reacquiring custody of her daughter. *Id.* After she answered the ad, Defendant came to pick E.D. up and immediately drove her to a hotel room where he directed her to have sex with a stranger in exchange for money. *Id.* at 9-11. Although Defendant told E.D. that she would get to keep half of the money she earned, he later caused her to give him the remainder she had earned on her first call and all of the money she earned thereafter. *Id.* at 12-18 and 52-55. E.D.'s

9

description of how Defendant went about pimping women, including his frequent use of force, fraud and coercion, matches that provided by J.S. *See id.* at 19-36, 46-52, and 57-58.

At one point E.D. told Defendant she did not want to go on a call with a "John" who wanted her to pretend to be his niece and then fight during sex, but after Defendant threatened her she went on the call anyway. *Id.* Like J.S., E.D. described Defendant forcing himself on her sexually whenever he pleased. *Id.* at 39-40. And once in Defendant's home, E.D. said she did not feel free to leave. *Id.* at 40-42. When E.D. reached her breaking point, she staged an escape that involved her mother calling law enforcement to report that she was being held against her will. *Id.* at 36-39.

Tab 5 contains police reports that followed E.D.'s escape and started the Federal Bureau of Investigation's involvement in this case. The reports further corroborate the Grand Jury testimony of J.S. and E.D. *See id.* Notably, at pages 11 through 15 of Tab 5, a report of an interview of Defendant can be found. During the interview, Defendant admitted that he knew E.D., J.S. and S.H. all had sex for money and that he took a cut of the profits ("usually at 50%" he claimed). *Id.* Defendant admitted being aware of the prostitution ads placed online for the girls and also to placing ads for "Diamond Dollz" to recruit girls. *Id.* Defendant also admitted to grabbing E.D. around her neck and choking her, and also to shoving E.D.

10

At pages 35-43 of Tab 5, the Court will find interview reports of individuals who encountered J.S. and observed her serious bodily injuries during the time she was with Defendant. One witness, who had never met J.S. before, described her as being "covered in blood." Tab 5 at 35. He told law enforcement that when he met J.S. there was "blood everywhere"; J.S.'s face was bloody and she had gashes on her back. *Id.* (See Tab 2 for photos of J.S. following that same incident and Tab 3 for other related police reports.)

Finally, at Tab 6, the government provides a transcript of the Grand Jury testimony of C.R. No charges were brought against Defendant based on his prostitution of C.R., but C.R.'s testimony provides further corroboration of the testimony of victims J.S. and E.D. C.R. met Defendant at a bar in approximately 2007. Tab 6 at 5. Thereafter C.R. witnessed Defendant pimping multiple women, including a girl named Jessica who was hit by a car and killed after "the money that she – that she had got from her services got lo[o]se, and she chased it along the highway[.]" *Id.* at 7. C.R. knew Defendant to be living with J.S. in 2010, and she knew that Defendant was pimping J.S. at that time. *Id.* at 9-10. Defendant, J.S., and another woman he was prostituting, S.H., moved in with C.R. in early 2011. (S.H. is the named victim in Count 5 of the Superseding Indictment. *See* DE # 38 at 5.) C.R.'s description of the rules Defendant set for the girls to follow matches that provided by J.S. and E.D. *See* Tab 6 at 11-20. C.R. also described in

11

detail Defendant repeatedly beating victim J.S. *Id.* at 21-29. Like he did to victims E.D. and S.H., Defendant also choked and beat C.R. *Id.* at 30-39.

Based on all of this evidence, the government urges the Court to find that Defendant's "offense," as defined in Guideline § 1B1.1(H), involved conduct described in § 2241(a) and therefore that the cross-reference in § 2G1.1(c)(1) applies, as does the four-level enhancement in § 2A3.1(b)(1).

### 2. **Defendant caused the victims to sustain serious bodily injuries**

The same evidence summarized above also establishes that Defendant caused his victims to sustain serious bodily injuries.

The Guidelines define "serious bodily injury" as:

> "Serious bodily injury" means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. In addition, "serious bodily injury" is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law.

U.S.S.G. § 1B1.1, Application Note 1L. Based on this definition, and particularly the presumption it includes, it is clear that Probation properly applied the 2-level enhancement in § 2A3.1(b)(4)(B). *See also United States v. Newman*, 965 F.2d 206, 212 (7th Cir. 1992) (finding different enhancement for inflicting serious bodily injury in the course of an aggravated assault

appropriate based upon "the combination of bodily and psychological harm in the present case").

In September 2011, Defendant beat J.S. across her back with an electrical cord, then threw her to the floor, kicked her in the face and torso, chipping her front tooth. *See* Tabs 1, 2, 3 and 5. Defendant dropped a 30-lb. dumbbell on J.S.'s chest and poured "Mr. Clean" cleaning solution in her eyes. *Id.* J.S. sustained a deep cut to the palm of her left hand and numerous wounds to her back, arms and legs. The photographs at Tab 2 show the injuries to J.S.'s body. After the neighbor called the police, J.S. was hospitalized for several days where she received stitches to her hand and treatment for two fractured ribs.

Defendant also physically and sexually abused E.D. and C.R., and he used force and threats of death, serious bodily injury, and kidnapping to cause E.D. to engage in prostitution. *See* Tabs 4 and 6.

All of this conduct meets the Guideline definition in § 1B1.1, Application Note 1L.

## C. THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a) SUPPORT A GUIDELINE SENTENCE

The nature and circumstances of Defendant's offense conduct are, in a word, horrific. While himself unemployed and putting forth no effort to earn a living, Defendant prostituted J.S. and E.D. by using force, fraud and

coercion. He treated them like property; he had sex with them whenever and however he pleased and he caused them to have sex with strangers six days a week for his own personal financial gain. Defendant debased and demeaned and repeatedly sexually violated victims J.S. and E.D., destroying any semblance of dignity or self-respect they once had. In addition to the psychological and emotional injuries they suffered, the Grand Jury testimony and documentary evidence amply demonstrates that Defendant physically abused both women, as well as C.R., causing serious bodily injury.

Based particularly on the account provided by C.R., Defendant has a long history of prostituting women. He also has a long history of engaging in physical violence against women. All three women who testified before the Grand Jury described being choked, hit or otherwise physically abused by Defendant when it suited him. It comes as no surprise that as far back as 2002, at the age of 22, Defendant was convicted of Aggravated Battery for striking a man about the head with a firearm. *See* DE # 110 (PSR) at para. 45-46. Defendant's other prior criminal convictions underscore his lack of respect for the law. *See id.* at paras. 37-55.

In short, Defendant is a violent sexual predator who poses a very real future risk of danger to society generally and to young women specifically.

## **CONCLUSION**

Based on the factors set forth in 18 U.S.C. § 3553(a) and the evidence discussed above, the government urges the Court to once again sentence Defendant to a term of incarceration of 120 months in prison. Further, because he will not be required to register as a sex offender despite his commission of many violent sex offenses, as proven by the evidence submitted herewith, the government respectfully requests that the Court impose upon Defendant a lifetime term of supervised release.

        Respectfully submitted,

        DAVID CAPP
        United States Attorney

By:   */ S /  Jill R. Koster*
        JILL R. KOSTER
        Assistant United States Attorney
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

/s/ *Jill R. Koster*
JILL R. KOSTER
Assistant U.S. Attorney
U.S. Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500